**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------x
EILEEN VENABLE,                      :
                                     :
                    Plaintiff,       :
                                     :
          v.                         :   04-CV-3532 (BSJ)
                                     :
REED ELSEVIER, INC.,                 :   **Order**
                                     :
                    Defendant.       :
                                     :
------------------------------------x
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

     Plaintiff Eileen Venable brings this pro se action alleging
discrimination in employment and a hostile work environment by
her former employer Reed Elsevier, Inc. (``Reed Elsevier''), in
violation of Title VII of the Civil Rights Act of 1974 (``Title
VII''), as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C.
§1981.  Before the Court is Reed Elsevier's motion for summary
judgment on all claims, pursuant to Rule 56 of the Federal Rules
of Civil Procedure.  For the reasons set forth below, Reed
Elsevier's motion is GRANTED in its entirety.

## I.   THE STANDARD FOR SUMMARY JUDGMENT

     A party moving for summary judgment under Federal Rule of
Civil Procedure 56(c) must show that no genuine issues of
material fact remain to be tried and that it therefore is
entitled to judgment as a matter of law.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23 (1986); Salaman v. Our Lady of
Victory Hosp., 514 F.3d 217 (2d Cir. 2008).  To defeat a motion
for summary judgment, the non-moving party must adduce admissible

evidence that demonstrates that genuine issues of material fact

remain.   See G.D. Searle & Co. v. Medicore Commc'ns, Inc., 843

F.Supp. 895, 903 (S.D.N.Y. 1994); Ozemebhoya v. Edison Parking

Corp., 2007 WL 2593008 at * 4-5 (S.D.N.Y. 2007).   In deciding the

motion, the district court ``is not to resolve issues of fact but

only to determine whether there is a genuine triable issue as to

a material fact.''   Howley v. Town of Stratford, 217 F.3d 141,

150 (2d Cir. 2000).   The court must consider the evidence and

draw all reasonable inferences in favor of the non-moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Summary judgment is improper if, looking at the record in this

light, there is any evidence from any source from which a

reasonable inference could be drawn in favor of the non-moving

party.   Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.

1994).   However, a party opposing summary judgment ``may not rest

upon mere conclusory allegations or denials, but must bring

forward some affirmative indication that [its] version of

relevant events is not fanciful.''   Podell v. Citicorp Diners

Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal citations

and quotation marks omitted).

Furthermore, in the context of a case where discrimination

is alleged, a trial court must proceed particularly cautiously in

evaluating a motion for summary judgment by an employer because

direct evidence of the intent to discriminate is rarely found.

See Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219,

1224 (2d Cir. 1994).

        Where, as here, a <u>pro</u> <u>se</u> litigant is involved, although the
same standards for dismissal apply, a court should give the <u>pro</u>
<u>se</u> litigant special latitude in responding to a summary judgment
motion.  <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999)
(courts should ``read the pleadings of a <u>pro</u> <u>se</u> plaintiff
liberally and interpret them `to raise the strongest arguments
that they suggest''') (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787,
790 (2d Cir. 1994))).  In particular, the <u>pro</u> <u>se</u> party must be
given express notice of the consequences of failing to respond
appropriately to a motion for summary judgment.  Local Civil Rule
56.2; <u>see</u> <u>McPherson</u>, 174 F.3d at 281; <u>Vital v. Interfaith Med.
Ctr.</u>, 168 F.3d 615, 620-621 (2d Cir. 1999).

        In this case, by Notice to <u>Pro</u> <u>Se</u> Litigant Pursuant to Local
Rule 56.2, the plaintiff was advised of the procedures for
responding to a motion for summary judgment, including the
requirement that she submit a response to the defendant's
statement pursuant to Local Rule 56.1 and to submit counter-
evidence.  The plaintiff was also provided with a copy of Rule
56.

## II. BACKGROUND

        The following facts are either alleged by the plaintiff or
are undisputed.

        Eileen Venable, an African-American female, commenced work
as a case-law editor for Lexis-Nexis (``Lexis''), a division of
Reed Elsevier in November 2000.  She worked from home, preparing
summaries of judicial opinions including an overview and a
statement of the outcome and procedural posture of each case.

3

Lexis provided Venable with a computer with which to complete her summaries. She was required to submit a specific weekly quota of summarized cases. During the first two years of her employment, Venable was promoted twice: first to senior case law editor, then to lead case law editor.

Jeanne Wertz supervised Venable from November 2000 until February 2002. Wertz completed an evaluation (called a ``PDP'') of Venable's performance at the end of 2001, after Venable's promotion to lead case editor. The PDP reflected an overall score of 3 or ``Competent,'' but identified Venable's performance as ``Below Expectations'' with regard to (1) sending in weekly production reports; (2) informing her manager of issues affecting production; and (3) lapses in motivation.

In February 2002 Venable applied for a position as an Editorial Manager, in which position she would have been responsible for supervising 40-60 employees. The position ultimately went to Leigh Ann Beauchamp, a white woman. Ms. Beauchamp received a grade of 1 or ``Excellent'' on her 2001 PDP. Beauchamp had previous supervisory experience within Lexis. Venable sent an email to a supervisor in April questioning the decision to hire Beauchamp for the position and complaining about her level of compensation.

As a result of her promotion, Ms. Beauchamp became Venable's supervisor. Venable sent Beauchamp an email on March 5, 2002, stating that she was having problems logging on to her computer and ``I think I am being harassed by some pajama wearing asshole and I am keeping a record of each incident.'' Venable was

4

referring to a member of the Lexis IT staff.  Venable testified
that that IT staff ``got satisfaction out of jerking me around.''
She also testified that members of the IT staff were harassing
her by sending her subscription to Network Computing magazine.

      After February 2002, Venable occasionally missed production
quotas.  Venable maintains that the she completed her quotas but
that they were not transmitted due to technical issues.  She
maintains that members of the IT staff were taking control of her
computer and deleting or otherwise manipulating her work product.
An investigation by Lexis failed to substantiate these claims.

      In August 2002, Venable began receiving pornographic spam
emails to her Lexis e-mail account.  She forwarded the emails to
Beauchamp and to Linda Miller in the HR Department.  After
Venable forwarded the emails, Miller learned that several other
employees had received them, including Philip Mowry, a white
male.  Miller asked IT staff to investigate how the offensive
spam had gotten through the company's firewall.

      Venable continued to occasionally receive offensive spam.
In October, she forwarded one of these messages to all employees
in her group (approximately 600 people) asking if anyone else had
received similar messages.  This broadcast violated Lexis policy
and Mowry, who was in a supervisory position, received several
complaints from people who had received Venable's email.  Venable
asserts that the offensive spam messages were sent by someone at
Lexis, but there is no evidence in the record supporting this
assertion.

Around the time that Venable and other employees began to receive unwelcome spam, another editor, Michael Young received a notification from Yahoo that someone was attempting to register his email address for subscriptions to websites containing child pornography.  Young passed these notifications on to the IT department and the IT department determined that another Lexis employee had subscribed Young to the sites.  That other employee was fired as a result.

On September 29, 2002, Beauchamp gave Venable a written warning (a ``Performance Improvement Action Statement (PIAS)'') regarding ``repeated acts of unprofessional conduct.''  Venable complained that she was being harassed by Beauchamp.  Alison Grimm and Wendy Jo Hays in the Lexis HR department investigated the complaint and found no basis for it.  The investigation found that Beauchamp had warned five other employees under similar circumstances, three white women and two white men. Additionally, Beauchamp had fired a white man for falsely claiming that technical problems were preventing him from meeting his quotas.

On November 13, 2002, Venable received another PIAS for missing quotas for the weeks of October 26, 2002 and November 9, 2002.  Venable admitted missing her quota for October 26 but claimed that she had sent the required number of cases for November 9 and that a technical problem must have prevented them from being transmitted.  On December 3, 2002, Beauchamp told Venable that she had not received any cases from Venable for the previous week.  Venable responded that she had been on vacation.

Venable received another PDP at the end of 2002.  Her 2002
PDP gave her an overall rating of 4 for ``Below Expectations''
and she received numerous individual ratings of 4 and 5,
``Unsatisfactory Work Performance.''

Because of Venable's numerous complaints about computer
problems, Lexis sent Venable a number of new computers to replace
purportedly defective ones, including two new computers in
succession in August and September.  In order to diagnose the
source of the technical problems, IT staff repeatedly requested
that Venable return the computers.  Lexis employees' use of Lexis
computers is governed by an Equipment Agreement.  The Equipment
Agreement states that upon request employees have seven days to
return any equipment or they will be billed for it.  Venable
asserts that this clause allowed her the option to be billed for
any equipment rather than return it.  Reed Elsevier maintains
that the Agreement requires employees to return equipment upon
request and that the billing alternative is in the nature of
liquidated damages.

On September 22, 2003, Brady Fening, one of Venable's
supervisors, wrote her an e-mail stating, ``[t]he Equipment
Agreement . . . does not give you the right to refuse return of
company property when requested.''  Venable refused to return the
computers.  Fening sent Venable another email on October 2
demanding return of the computers.  Venable once again refused.
Fening, Miller, and Beauchamp called Venable on October 14 and
asked her again to return the computers.  Venable refused.
Fening then told Venable that her employment had been terminated

and a letter confirming the termination of Venable's employment
was sent that day.  Venable has never returned or paid for any of
the equipment that she kept.

Following the termination of Venable's employment, she filed
a claim for unemployment benefits with the Virginia Employment
Commission (``VEC'').  The VEC approved payment of unemployment
benefits in a determination dated November 5, 2003.  Lexis
appealed the decision, arguing that Venable was not entitled to
benefits because she was fired for misconduct. On May 26, 2004, a
VEC Appeals Examiner affirmed the award of benefits to Venable.
The Appeals Examiner ruled that Venable's reliance upon her
interpretation of the Equipment Agreement meant that her refusal
to return the computers was not willful misconduct disqualifying
her from benefits under Virginia law.

### Discussion

Venable's complaint appears to assert three distinct
claims: (1) an employment discrimination claim in connection with
the decision to promote Beauchamp rather than Venable to the
position of Editorial Manager; (2) an employment discrimination
claim in connection with the termination of Venable's employment;
and (3) a hostile work environment claim in connection with the
pornographic spam messages Venable received in 2002 and 2003.  As
discussed below, based on the record in evidence, no reasonable
finder of fact could find that Venable has met her burden with
respect to any of these claims and, as a result, Reed Elsevier is
entitled to summary judgment.

8

## Failure to Promote and Wrongful Discharge

Title VII of the Civil Rights Act prohibits an employer
from discriminating against an individual with respect to his
``compensation, terms, conditions, or privileges of employment''
because of his race or gender.  42 U.S.C. § 2000e-2(a)(1).  Such
claims are governed by the familiar McDonnell Douglas framework,
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), under
which the plaintiff has the initial burden of making out a prima
facie case of discrimination.[1]  See Beyer v. County of Nassau,
524 F.3d 160, 163 (2d Cir. 2008).  ``The prima facie showing
required of a plaintiff in an employment discrimination lawsuit
is a very modest one.'' McClee v. Chrysler Corp., 926 F. Supp.
443 (S.D.N.Y. 1996).  For purposes of this decision, I assume
without deciding that Venable has met her modest initial burden
of making out the prima facie case with respect to her failure to
promote and wrongful termination claims.

If the plaintiff makes out a prima facie case of employment
discrimination, defendant then has the burden to proffer a
legitimate non-discriminatory reason for its actions.  To do so,
the defendant must produce, ``through the introduction of
admissible evidence, reasons for its actions which, if believed
by the trier of fact, would support a finding that unlawful
discrimination was not the cause of the employment action.''
Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 38 (2d Cir.
1994)(quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506

---

[1] The same framework governs Plaintiff's § 1981 claim.  See McClee v. Chrysler
Corporation, 109 F.3d 130, 134 (2d Cir. 1997).

9

(1993)).  Reed Elsevier has clearly met that burden with respect to both its challenged employment actions.  It has adduced admissible evidence that Beauchamp was more qualified than Venable for the position of Editorial Manager and it has adduced admissible evidence that Venable's supervisors terminated her employment because she refused to return computer equipment and they believed that her refusal violated Lexus's Equipment Agreement.

After the defendant has articulated non-discriminatory reasons for its actions, the plaintiff has the opportunity to produce evidence that the stated reasons are mere pretext for discrimination.  Chambers, 43 F.3d at 38.  Here, Venable points to no evidence tending to show that Reed Elsevier's stated reasons are pretextual.  Venable does not even purport to do so with respect to her failure to promote claim.  Thus, Reed Elsevier is clearly entitled to summary judgment on that claim.  With respect to her wrongful discharge claim, Venable asserts that the VEC Appeals Examiner ruling in her favor shows that her failure to return Lexis computer equipment after being repeatedly directed to do so is not a legitimate, nondiscriminatory reason for her discharge.  This assertion is unavailing.  The VEC decision simply holds that Venable's failure to return the computers did not disqualify her from receiving unemployment benefits under Virginia law.  The ruling casts no doubt on the fact that her failure to return the computers was the reason she was fired or that the failure to return the computers was a legitimate reason to fire her.  Indeed, the decision explicitly

states that ``[e]ven employees fired for what the employer
considers to be good cause may be entitled to unemployment
compensation.'' (Sutton Decl. Ex. FFF). Nothing in the decision
of the VEC Appeals Examiner could provide the basis for a
reasonable trier of fact to find that Reed Elsevier's stated
reason for firing Venable is pretext for discrimination.

     Because Venable fails to point to any evidence that Reed
Elsevier's stated legitimate reasons for its employment decisions
are pretextual, Reed Elsevier is entitled to summary judgment
with respect to Venable's employment discrimination claims.


Hostile Work Environment

     Venable also asserts a hostile work environment claim based
upon her receipt of pornographic spam emails in her Lexis work
email account and her receipt of unwanted copies of Network
Computing magazine.

     In assessing claims of discrimination based upon a hostile
work environment under Title VII, ``the critical issue . . . is
whether members of one sex [or race] are exposed to
disadvantageous terms or conditions of employment to which
members of the other sex [or of other races] are not exposed.''
Harris v. Forklift Systems, Inc., 410 U.S. 17, 25 (1992)
(Ginsburg, J., concurring). Here, Venable's claim is based upon
receipt of emails which were also received by many other
employees, both mail and female, both African-American and white.
Venable cannot establish the requisite link between her status as

                               11

a member of protected class and her receipt of the emails to
support a Title VII claim.

Additionally, in order to prevail on a hostile work
environment claim, plaintiff must show that there is some basis
for imputing the allegedly hostile environment to the employer.
Faragher v. City of Boca Raton, 524 U.S. 775 (1998) (discussing
requirements for employer's vicarious liability for harassment
under Title VII).  Venable has adduced no evidence to support the
conclusion that the offensive spam should be imputed to Lexis.

Venable also asserts a hostile work environment claim on
the grounds that she received copies of a computing magazine to
which she did not subscribe.  She asserts, without any evidence,
that members of Lexis's IT staff subscribed her to the magazine
in order to harass her.  Setting aside the question whether
receipt of a computer magazine could meet the required showing of
``a workplace so severely permeated with discriminatory
intimidation, ridicule, and insult that the terms and conditions
of [her] employment were thereby altered,'' Alfano v. Costello,
294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks
omitted), there is no basis in the record for imputing Venable's
receipt of Network Computing magazine to Reed Elsevier.

Venable can point to no evidence that the conditions of her
employment were in any way affected by her status as a member of
protected class.  As a result, Reed Elsevier is entitled to
summary judgment on Venable's hostile work environment claim.

12

## IV. CONCLUSION

For the reasons set forth above, Reed Elsevier's motion for summary judgment is GRANTED. The clerk of the court is directed to close the case.

**SO ORDERED:**

Barbara S. Jones
**UNITED STATES DISTRICT JUDGE**

New York, New York
March  6 , 2009

13